UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| ROBERT HOLLAND, <br><br> Plaintiff, <br><br> v. <br><br> DAVID COCAGNE, *et al.*, <br><br> Defendants. | Case No. 2:24-CV-420-GSL-JEM |

## OPINION AND ORDER

This matter is before the Court on Defendants Cocagne, Bleavins, Stewart and Harris' Motion to Bar Plaintiff from Filing Documents in Lake Superior Court [DE 9] filed on December 17, 2024, Defendants' Motion to Dismiss and Memorandum of Law [DE 13] filed on January 2, 2025, and Plaintiff's Verified Motion to Strike [DE 14] filed on January 23, 2025. For the reasons below, the motion to bar filings is denied as moot, the motion to strike is stricken in part and construed as a response brief in part, and the motion to dismiss is granted as to the RICO claim.

## BACKGROUND

Plaintiff initiated this cause of action by filing a complaint in Lake County Superior Court on October 28, 2024. Defendants removed the matter to federal court on November 26, 2024. Plaintiff names civil RICO and several state law matters as the basis for his lawsuit regarding his apartment and the living conditions at the Silver Birch of Hammond residential care facility. Plaintiff is litigating his case without a lawyer. Instead of filing answers to the complaint, Defendants have moved for dismissal of the complaint for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6).

## MOTION TO BAR STATE COURT FILINGS

The motion to bar state court filings is moot because the request in that motion was to bar Plaintiff Robert Holland from filing in a state court matter while a now-decided motion was pending, so the Court denies that motion as moot.

## MOTION TO STRIKE

Plaintiff is a restricted filer in this Court and has outstanding fines in two cases. See *Holland v. Lake County Municipal Gov't*, No. 2:13-cv-00179 at [DE 78]; *Holland v. CEO Countrywide Home Loans Inc.*, No. 2:14-cv-00005 at [DE 37]. Pursuant to *In re Matter of Joseph Skupniewitz*, 73 F.3d 702 (7th Cir. 1996), restricted filers such as Plaintiff are permitted to "file a response to any motion made by the defendants which could result in a final judgment." *Skupniewitz*, 73 F.3d at 705. Among other matters, Plaintiff's filing bearing the title "Plaintiff's Verified Motion to Strike [A Defensive Motion]" includes his response to the motion to dismiss, which could result in a final judgment. Accordingly, the Court allows the filing on the docket, but the Court strikes all portions of that document that do not respond to the motion to dismiss, including arguments about default, sanctions, and extensions of time, as well as Plaintiff's requests for relief. The Court also notes that arguments for striking the motion to dismiss under Federal Rule of Civil Procedure 12(f) are inappropriate because that rule governs pleadings, and a motion is not a pleading. The Court construes the non-stricken portions of this document as Plaintiff's response to the motion to dismiss.

## MOTION TO DISMISS

### A. Legal Standard

A complaint survives a Rule 12(b)(6) motion to dismiss when it "state[s] a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has

2

facial plausibility when the plaintiff pleads factual content that allows the court to draw reasonable inferences that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). "When examining a motion to dismiss, [a court] will accept as true all well-pleaded facts in the complaint and draw reasonable inferences in favor of the plaintiff." *Kap Holdings, LLC v. Mar-Cone Appliance Parts Co.*, 55 F.4th 517, 523 (7th Cir. 2022) (citation omitted). "But legal conclusions and conclusory allegations merely reciting the elements of the claim are not entitled to this presumption of truth." *Id.* (quoting *McCauley v. City of Chicago*, 671 F.3d 611, 616 (7th Cir. 2011)).

The Court gives a more liberal reading and applies a less stringent standard to a pro se litigant's complaint than it does to a complaint drafted by legal counsel. *Smith v. Dart*, 803 F.3d 304, 309 (7th Cir. 2015) (citing *Haines v. Kerner*, 404 U.S. 519, 520 (1972) (per curiam); *Arnett v. Webster*, 658 F.3d 742, 751 (7th Cir. 2011)).

### B. RICO Claim

Out of the eleven claims in the complaint, the Court begins with Plaintiff's claim brought under the Racketeer Influenced and Corrupt Organizations Act (RICO), which is Plaintiff's only claim based on federal law and the only ground alleged for the Court's subject matter jurisdiction over this lawsuit. The statutory provision allowing private civil suits under RICO "was never intended to allow plaintiffs to turn garden-variety state law fraud claims into federal RICO actions." *Jennings v. Auto Meter Prods., Inc.*, 495 F.3d 466, 472 (7th Cir. 2007). For Plaintiff to withstand the motion to dismiss, his complaint must allege "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Id.* (quoting *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496 (1985)). Defendants argue that Plaintiff has failed to plead predicate acts of racketeering activity, a pattern of racketeering, or the existence of an enterprise.

      1.    *Predicate Acts of Racketeering Activity*

The definition of racketeering activity is provided in 18 U.S.C. § 1961(1), which enumerates the state and federal law violations that are considered to be racketeering activity. Defendants argue that Plaintiff has not plausibly pled predicate acts of racketeering activity, though they do note that Plaintiff referenced mail fraud and human trafficking in his complaint. Plaintiff responds that he has alleged theft, receiving stolen property, fraudulent inducement, fraud "bait and switch schemes," battery, money laundering, mail fraud, and wire fraud.

      a.    Non-Fraud-Based Predicate Activity

The Court first addresses the predicate acts that are not fraud-based activities. These are human trafficking, theft, battery, receiving stolen property, and money laundering. For the reasons below, Plaintiff has not sufficiently pled any of these matters as predicate acts for a civil RICO claim.

Because Plaintiff, in responding to the motion to dismiss, does not further pursue the allegation of human trafficking and because his reference to trafficking in his complaint is "Defendants are acting pursuant to a conspiracy . . . fraudulently inducing the elderly and disabled . . . to become residents for the purpose of appropriating . . . their moneys, property, benefits or resources (Human Trafficking) for the . . . Defendants own benefit . . . ," the Court finds that human trafficking is not plausibly pled in the complaint. Compl. ¶ 212, ECF No. 4.

Theft and battery are not predicate acts under RICO. 18 U.S.C. § 1961(1)(A); *Buck Creek Coal, Inc. v. United Workers of Am.*, 917 F. Supp. 601, 612 (S.D. Ind. 1995) (theft); *c.f. Anael v. Interstate Brands Corp.*, No. 02 C 5192, 2003 WL 21995183, at *7 (N.D. Ill. Aug. 18, 2003) (aggravated battery).

4

Receiving stolen property that has crossed state lines, money laundering, mail fraud, and wire fraud can be predicate acts under RICO. 18 U.S.C. § 1961(1)(B); *see also* 18 U.S.C. §§ 1341, 1343, 1956–57, 2315 (statutes regarding mail fraud, wire fraud, money laundering, and receiving stolen property, respectively). Where the fraudulent inducement and bait-and-switch scheme allegations fall within either mail fraud or wire fraud, they can be predicate acts under RICO, but they are not by themselves predicate acts. *See* 18 U.S.C. § 1961(1).

Plaintiff's reliance on receipt of stolen property is misplaced. He conflates theft—that is, taking property that then becomes stolen by nature of that very theft—with receiving property that has already been stolen. *See, e.g.*, Compl. ¶ 165 ("Defendants are acting pursuant to a conspiracy . . . inducing the elderly and disabled (like [Plaintiff]) to become residents for the purpose of appropriating (theft/receiving stolen property) their moneys, property, benefits or resources."). Plaintiff has not plausibly alleged receipt of stolen property, so he cannot use it as a predicate act to support his RICO claim.

Plaintiff points the Court to the following paragraph in support of his assertion that Defendants engaged in money laundering:

> In addition, the Associate In Fact Defendants did agree to to [*sic*] use or invent, directly or indirectly, any part of such income, or the proceeds of such income, in acquisition of any interest in, or the establishment or operation of, any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce.

Compl. ¶ 208. At minimum, Plaintiff has failed to allege (1) that Defendants knew that "such income" represents the proceeds of some form of unlawful activity, (2) moved or attempted to move the income to or through a foreign place, or (3) conducted or attempted to conduct a financial transaction involving property that law enforcement or another authorized person has represented to be the proceeds or property used in specified unlawful activity as necessary to commit money laundering under 18 U.S.C. § 1956. If Plaintiff means to allege that Defendants

5

have violated 18 U.S.C. § 1957, then he has failed to allege that any transaction involved property exceeding a value of $10,000. Plaintiff has not plausibly pled money laundering as a predicate act for his RICO claim.

      b.  Fraud-Based Predicate Activity

  The Court now turns to Plaintiff's claims based on fraud. When the alleged predicate acts for a RICO claim are matters of fraud, Federal Rule of Civil Procedure 9(b) requires plaintiffs to "state with particularity the circumstances constituting fraud," though intent "may be alleged generally." *See Midwest Grinding Co. v. Spitz*, 976 F.2d 1016, 1020 (7th Cir. 1992). More specifically, "[p]laintiffs alleging mail and wire fraud as predicate acts to their RICO claims must allege 'the identity of the person who made the misrepresentation, the time, place and content of the misrepresentation, and the method by which the misrepresentation was communicated to the plaintiff.'" *City of Rockford v. Mallinckrodt ARD, Inc.*, 360 F. Supp. 3d 730, 773 (N.D. Ill. 2019) (quoting *Vicom, Inc. v. Harbridge Merch. Servs., Inc.*, 20 F.3d 771, 777 (7th Cir. 1994)). Still, the particularity requirement of Rule 9(b) must be relaxed where the plaintiff lacks access to all facts necessary to detail his claim." *Corley v. Rosewood Care Ctr., Inc.*, 142 F.3d 1041, 1051 (7th Cir. 1998).

      i.  Wire Fraud

  Plaintiff alleges that "[t]he use of the wire was an integral part of the scheme to defraud." Compl. ¶ 227. The elements of wire fraud are "a scheme to defraud, a false representation, and use of interstate communications." *United States v. Pritchard*, 773 F.2d 873, 876 (7th Cir. 1985).

  Plaintiff contends that Defendants used, or caused others to use, wire communications such as "a website, internet, fax, credit or debit card, invoices, [or] monthly billing statements" to carry out the alleged bait-and-switch, which "employed false or fraudulent pretenses,

6

representations, or promises that were material to the transactions." Compl. ¶ 225. The "fraudulent, false, deceptive and/or misleading oral, written and implied promises as stated above [were] regarding the quantity and/or quality of services that [Defendants] had no ability and/or intent to fulfill," *id.* ¶ 229, and "[t]he scheme was in connection with the conduct of marketing," *id.* ¶ 233. Plaintiff also alleges that Defendants acted with the specific intent to defraud. *Id.* ¶ 230.

In discussing his fraudulent inducement claim, Plaintiff makes the following detailed allegation of use of interstate communications:

> On and about April 29, 2022, the Defendants by and through their internet website(s) did make false, deceptive and/or misleading representations that that [*sic*] the SILVER BIRCH assisted living community would meet the terms and conditions of the residential contract (Lease an [*sic*] Residential Agreement (LARA)) and provide a clean, safe and sanitary environment and quality services.[1]

Compl. ¶ 44.

This statement contains the when, where, what, and how of the alleged misrepresentation. Though identifying Defendants in general as responsible for the representation, the statement does not specifically identify the author of the website's contents or the ultimate person responsible for the website's publication, but the Court will excused this "in the face of information asymmetr[y]." *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr. v. Walgreen Co.*, 631 F.3d 436, 446 (7th Cir. 2011); *see also Corley*, 142 F.3d at 1051.

Plaintiff alleges that he was provided a defective chair that collapsed, injuring Plaintiff in the process. Compl. ¶ 103. He also alleges that his apartment floods approximately every four

---

[1] Elsewhere in his complaint, Plaintiff directs the Court to other matters advertised on a Silver Birch website, but the Court does not consider them because there is no allegation or indication that those matters were also advertised during the timeframe relevant to Plaintiff's assertion that he was induced into residence at the facility through fraud. *See* Compl. ¶ 38. The time of an alleged misrepresentation is necessary to plead fraud with particularity. He also later makes a conclusory and vague assertion that some means of interstate communication was used to somehow carry out the fraudulent scheme. *See id.* ¶ 225. This provides no additional detail regarding the alleged fraud.

7

months due to faulty plumbing and structural failures, with unsanitary brown water leaking through the ceiling and walls and onto the floor of his apartment. *Id.* ¶ 87–88. As a result, his apartment has "unsanitary stains, mold, mildew and foul odors in every room." *Id.* ¶ 92; *see also id.* ¶¶ 97, 100. Plaintiff also alleges that a common area near his apartment has also flooded. *Id.* ¶ 89. Plaintiff alleges that, despite his requests, the facility has not fixed the problem. *Id.* ¶ 90–96. This is enough to allege the use of interstate communications (the website) to make the false representation (that "a clean, safe and sanitary environment" would be provided).

The final element is a scheme to defraud. Plaintiff alleges that this scheme was to obtain money or property from Plaintiff and other residents through misrepresenting the quality of the facility and services that Defendants would provide, Compl. ¶ 221, 228–29, and that Defendants had the intent to defraud, Compl. ¶ 230. Plaintiff has sufficiently alleged a predicate act of wire fraud.

          ii.    Mail Fraud

Plaintiff alleges that "[t]he use of the mail was an integral part of the scheme(s) to defraud." Compl. ¶ 219. The elements of mail fraud are "(1) the defendant's participation in a scheme to defraud; (2) defendant's commission of the act with intent to defraud; and (3) use of the mails in furtherance of the fraudulent scheme." *Williams v. Aztar Ind. Gaming Corp.*, 351 F.3d 294, 298–99 (7th Cir. 2003).

Plaintiff alleges that Defendants used the mail in sending monthly invoices and billing statements in fulfilling the bait-and-switch that he believes occurred. *Id.* ¶ 220. This bait-and-switch involved fraudulent or misleading promises about the quality and quantity of services available at the facility, thereby inducing people like Plaintiff to agree to live at the facility. If the scheme is successful, people will pay to live at the facility, but Defendants will not provide the

8

promised services. Intent can be pled generally, and Plaintiff did so. *See* Compl. ¶ 224 ("The Associate in Fact Defendants acted with specific intent to defraud."). Accordingly, use of mail and intent are sufficiently pled. That leaves the fraudulent act itself, which must be pled with particularity.

Plaintiff elaborates on the alleged misrepresentations earlier in his complaint. He alleges that on or about April 29, 2022, Defendants represented to Plaintiff that they would provide a clean, safe, and sanitary environment and quality services. Plaintiff alleges these representations were made through Defendants' website, *id.* ¶ 44, pamphlets and marketing materials, *id.* ¶ 45, Defendants' eligibility coordinator, *id.* ¶ 46, Defendant Neysa Stewart, *id.* ¶ 47, and Defendant Yolanda Harris, *id.* ¶ 48. As with the wire fraud analysis, the Court finds that the necessary details of this misrepresentation have been alleged.

Plaintiff also makes allegations regarding a library, computer room, exercise room, and general store. However, he has not met the pleading standard for this allegedly fraudulent misrepresentation. *See* Compl. ¶¶ 38 (alleging undated advertisement of services on a website), 53 (alleging undated promises made generally in writing, orally and by implication), 79 (same), 221 (same).

On first blush, paragraph 213 of the complaint appears to contain much, if not all, of what is necessary to plead fraud with particularity as to the amenities. That paragraph alleges, in full:

> Fraudulent inducement. On April 29, 2022, prior to entering into a residential contract with the Defendant SILVER BIRCH assisted living community Enterprise, the Plaintiff Robert Holland was fraudulently induced to contract [See I.C. § 35-43-5-4 F6] by the Associate in Fact Defendants by making fraudulent, false, deceptive and/or misleading oral, written and implied promises regarding the quantity and/or quality of services that they had no ability and/or intent to fulfill, i.e., that the apartment would be functioning and habitable with access by elevator to pharmacy and nursing services, a library, computer room, convenience store, T.V. room(s) and pool (billiard) room(s) on the upper floors on a regular and consistent daily basis.

Upon a closer reading, however, Plaintiff does not plead with particularity what was said orally, what was written down, and what was communicated through implication only, nor does he indicate who was the speaker, on what document the written representations were made, or how other matters were implied. The Court is aware of some information asymmetries, but Plaintiff should still be able to identify to some degree the speaker of an oral promise—such as a physical description, the position they held, or the role they played in Plaintiff choosing the facility—or the document which contained a written promise. He should also be able to describe what actions of Defendants' led to them making what could fairly be considered implicit promises. He pleads the specific "what" and "when," but the "who" and "how" fall short. Plaintiff has not sufficiently pled a predicate act of mail fraud based on misrepresentation of the facility's amenities.

2.   *Pattern of Racketeering Activity*

A "pattern" of racketeering activity requires at least two predicate acts of racketeering within a ten-year span. *Jennings*, 495 F.3d at 472. Further, there are relationship and continuity requirements to form a pattern: the predicate acts must be related, and they must "pose a threat of continued criminal activity." *Id.* at 473. "The pattern requirement is difficult to define and requires courts to use common sense." *Meyer Material Co. v. Mooshol*, 188 F. Supp. 2d 936, 941 (N.D. Ill. 2002). Factors to consider when evaluating continuity are "(1) the duration of the predicate acts, (2) the number and variety of predicate acts, (3) the number of victims, (4) the presence of separate schemes, and (5) the infliction of distinct injuries." *EQ Fin., Inc. v. Pers. Fin. Co.*, 421 F. Supp. 2d 1138, 1145–46 (N.D. Ill. 2006) (citing *Morgan v. Bank of Wukegan*, 804 F.2d 970, 975 (7th Cir. 1986)).

The Court's analysis in the previous section determined that Plaintiff sufficiently pled both wire fraud and mail fraud regarding misrepresentation of the provision of a "clean, safe, and

sanitary environment" to induce Plaintiff to live at the facility, though there is overlap in the facts supporting both acts. The scheme identified is to obtain money from leases gained through fraudulent promises. This fraud, however, is connected particularly to Plaintiff through the faulty chair that injured him and the incursion of brown water into his unit. Though his bill comes monthly, the inducement to choose the facility was a single event that occurred over a short period of time; it is not ongoing. The duration, number, and variety of predicate acts are minimal, as are the number of victims, schemes, and distinct injuries. These factors weigh against finding a pattern of racketeering activity. Missing among Plaintiff's allegations is any indication that Defendants have made a pattern of committing this fraud against others or will likely do so in the future. This is, simply put, a garden-variety state law fraud claim that has not been pled to be part of a pattern of racketeering activity, so it does not state a claim for a civil RICO violation.

### C. State Law Claims

"As a general matter, when all federal claims have been dismissed prior to trial, the federal court should relinquish jurisdiction over the remaining pendant state claims." *Williams v. Rodriguez*, 509 F.3d 392, 404 (7th Cir. 2007) (internal citations omitted). This rule is subject to three exceptions, but the Court does not find that any of them apply in this case. *Id.* This case is early in its lifecycle, discovery has not taken place, and limited judicial resources have been expended thus far. Moreover, the Court's reasoning with respect to Plaintiff's federal claim is not dispositive of Plaintiff's pendant state claims. Thus, the Court declines to exercise supplemental jurisdiction over the remaining state law claims and remands this matter to state court.

### CONCLUSION

Based on the above, the Court hereby **GRANTS in part** Defendants' Motion to Dismiss and Memorandum of Law [DE 13] and **DISMISSES** the civil RICO claim. The Court also

**DENIES as moot** Defendants Cocagne, Bleavins, Stewart and Harris' Motion to Bar Plaintiff from Filing Documents in Lake Superior Court [DE 9].

Plaintiff's Verified Motion to Strike [A Defensive Motion] [DE 14] is **STRICKEN in part** and **CONSTRUED in part** as a response, so the Court **DIRECTS** the clerk of court to terminate the documents status on the docket as a pending motion.

Finally, the Court **RELINQUISHES** jurisdiction over the remaining state law claims and **REMANDS** this matter to Lake County Superior Court.

SO ORDERED.

ENTERED: August 28, 2025

/s/GRETCHEN S. LUND  
Judge  
United States District Court